UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-121

MICHAEL HATHAWAY, *On Behalf of Himself*
*and All Others Similarly Situated*                                                             PLAINTIFFS

V.

SHAWN JONES MASONRY                                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Motion for Conditional Certification of a Fair Labor Standards Act ("FLSA") Collective Action (DN 16). Defendant has responded (DN 21). Plaintiff has replied (DN 22). This matter is now ripe for adjudication. For the following reasons, Plaintiff's motion is GRANTED.

## BACKGROUND

Plaintiff Michael Hathaway filed this FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and all individuals employed by Defendant Shawn Jones Masonry as a Laborer from July 8, 2008 to the present. Plaintiff, and other Laborers, performed various jobs to assist brick masons at construction sites such as assembling and disassembling scaffolds, supplying materials to masons, helping to operate a grout pump, and cleaning floors. Plaintiff was paid an hourly wage for his work and was not an exempt employee. In his complaint, Plaintiff contends that Defendant violated §§ 207(a)(1) and 206(a) of the FLSA by failing to compensate the putative class members for non-commute travel time and other work performed after their work day had commenced.

According to Plaintiff, Defendant required him and the other Laborers to arrive at its work facility in Murray, Kentucky ("Murray Facility") to prepare and load equipment onto a

1

company truck before traveling to a designated work site for the day.[1]  Upon arriving at the work site, if conditions were suitable for work, a foreman declared that the work day had begun.  If the weather conditions were not suitable for work upon arriving at the work site, the employees would not be paid.[2]  At the end of an eight-hour day, or when the conditions became unsuitable for work, a foreman would declare the work day over.  Plaintiff contends, and Defendant admits, that he and the other Laborers are only compensated for the hours recorded by the foreman while they are actively working at a work site.   Plaintiff alleges that, after the foreman declared the workday over, he and the other Laborers were required to load the equipment back on the company truck and then return to the Murray Facility before returning home for the day.

## STANDARD TO CERTIFY COLLECTIVE ACTION

Pursuant to § 207(a) of the FLSA, employers are required to pay time-and-a-half for employee labor exceeding forty hours per week.  29 U.S.C. § 207(a)(1).  However, the FLSA expressly exempts from the work day "walking, riding or traveling to and from the actual place of performance of the principle activity or activities which such employee is employed to perform."  29 U.S.C. § 254(a)(1).  Also exempted are those activities which are preliminary to or postliminary to the principle activities.  29 U.S.C. § 254(a)(2).  Other than these limitations, the "continuous work day" rule applies, meaning that "any walking, riding, or traveling time that occurs 'after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is . . . is covered by the FLSA.'"  *Epps v. Arise Scaffolding & Equip., Inc*., 2011 WL 1566004 at *5 (E.D. Va. Feb. 17, 2011) (quoting *IBP, Inc. v. Alvarez*, 546

---

[1] The distance between the Murray facility and the work sites generally varied from 55 miles to 215 miles.

[2] If the weather conditions were not suitable, employees would wait until the conditions became suitable or until the work site was abandoned for the day.  Plaintiff contends that employees were not compensated for the wait time.

U.S. 21, 31 (2005)).  Thus, time spent by an employee in travel as part of his "principal activity," such as travel from one job site to another job site during the workday, must be counted as hours worked.  29 C.F.R. § 778.38.

An employer who violates § 207 of the FLSA is liable to the employees affected by that violation in the amount of the employees' unpaid overtime compensation. 29 U.S.C. § 216(b). The FLSA also provides that employees may bring a claim on their own behalf and on behalf of "similarly situated" persons. 29 U.S.C. § 216(b).  A collective action under the FLSA permits similarly situated employees to opt-in to the action, unlike the opt-out approach typically utilized under Federal Rule of Civil Procedure 23.  *Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir.2006).  Therefore, these similarly situated employees must be notified of the lawsuit.  *Id.* First, however, the Court must determine "whether plaintiffs have shown that the employees to be notified are, in fact, 'similarly situated.'"  *Id.*

Courts have used a two-phase inquiry when determining whether employees are similarly situated.  *Id*.  The first phase takes place at the beginning of discovery.  *Id*.  Authorization of notice requires only a "modest factual showing" that the plaintiff's "'position is similar, not identical, to the positions held by the putative class members.'"  *Id*. at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)).  At this stage, courts generally consider the pleadings and any affidavits which have been submitted.  *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  If the court conditionally certifies the class, the putative class members are given notice and the opportunity to opt in.  *Id*.

The second phase takes place after "'all of the opt-in forms have been received and discovery has concluded.'"  *Comer*,  454 F.3d at 546 (quoting *Goldman v. RadioShack Corp.*,

2003 WL 21250571 at *6 (E.D. Pa. Apr. 17, 2003)).  At this stage, the Court has much more information on which to base its decision.  *Morisky v. Public Service Elec. and Gas Co.*, 111 F.Supp.2d 493, 497 (D. N.J. 2000).  For this reason, the Court must employ a stricter standard and examine more closely the question of whether the members of the class are in fact similarly situated.  *Comer*, 454 F.3d at 547.  If the court determines that the claimants are similarly situated, the collective action proceeds to trial.  *Mooney*, 54 F.3d at 1213-14.  If the court determines that the claimants are not similarly situated, the court must decertify the class and dismiss the opt-in plaintiffs without prejudice.  *Id.*

## ANALYSIS

1. **Whether Conditional Certification is Warranted**

    Plaintiff contends that conditional certification of a collective action is warranted because Defendant employed a common policy or plan of not compensating its Laborers for all hours worked in violation of the FLSA.  In response, Defendant argues that Plaintiff has failed to show that a similarly situated class exist and therefore, conditional certification is not warranted.  Because this putative collective action is at the first stage of certification, the Court will employ a "fairly lenient standard" to determine whether plaintiff's position is similar to the positions held by the putative class members.  *See Comer*, 454 F.3d at 547.

    The plan or policy, allegedly applicable to all Laborers, includes the following: (1) requiring employees to report to the Murray Facility and load the equipment in the company vehicle (or wait while others do so) without compensation for time spent at the Murray Facility; (2) requiring employees to travel from the Murray Facility to the work site without compensation for travel time; (3) requiring employees to wait at the work site without compensation if the weather conditions were unsuitable; and (4) requiring employees to report back to the Murray

Facility after leaving the work site without compensation for travel time.  Defendant denies that employees were required to report to the Murray facility before traveling to the work site and after leaving the work site.  However, Defendant admits that employees who reported to the Murray Facility before travelling to the work site were not compensated for such time and that employees who reported to the work site, but who were not able to actively work at the work site due to unsuitable weather conditions, were not compensated for time spent traveling to and from the work site or for time spent waiting at the work site.   Def. Responses to Pl.'s RFA, DN 16-3; Def. Ans. To Pl.'s Int., DN 16-2.

Defendant contends that the opportunity to ride in the company vehicle from the Murray Facility to the work sites was not a requirement but merely a courtesy it extended to its employees.  Leanna Jones Affidavit, DN 21-1 at ¶ 3.  As evidence of there being no such requirement, Defendant highlights the fact that there are Laborers who take their own vehicle to the work sites rather than riding in the company vehicle.  *Id*. at ¶ 5.  Defendant also maintains that there is no policy of requiring Laborers to load tools into the van, as "the size of the van would not be conducive to hauling tools for our masonry business." *Id*. at ¶ 6.  Defendant also provided to Plaintiff statements signed by fifty-two employees attesting to their understanding that they would not be paid for travel time to and from work sites.  However, such employee statements fail to show that employees were not required to report to the Murray Facility; instead, such statements show only the existence of a policy of not compensating employees for travel time between the Murray Facility and the work sites.

As evidence that employees *were* required report to the Murray facility, Plaintiff states that Leanna Jones, the office manager, told him when he was hired: "You be here at the shop at

5

ten minutes to five then you take the truck."[3] Hathaway Affidavit, DN 16-5 at ¶ 3. According to Plaintiff, he was never told that he could drive himself to the work site instead of first reporting to the Murray Facility. As evidence that other Laborers were subject to the same requirement, Plaintiff states that he personally observed other Laborers drive from homes that were closer to the work sites in order to report to the more distant Murray facility before riding in the company vehicle to the work site. Plaintiff further states that other Laborers helped him load equipment onto the truck at the Murray Facility, and if he did not load the equipment that day, he observed other Laborers do so while he waited. Hathaway Affidavit, DN 16-5 at ¶ 2-8.

Other individuals, currently or previously employed by Defendant, have indicated interest in joining this action and have stated that they were required to report to the Murray Facility. Wes Sullenger, counsel for Plaintiff, stated in his affidavit that he received a call from Michael Flener, who described himself as a former employee who was required to report to the Murray Facility every morning but who was not compensated from travel time from the facility and the job site. Sullenger Affidavit, DN 16-6 at ¶ 3. Mr. Sullenger also stated that he received a phone call from John Cummings, another former employee of Defendant, who stated that he was required to report to the company's Murray Facility every morning. *Id*. at ¶ 5. This suggests the existence of other employees who were subject to such a requirement.

Additionally, Plaintiff has presented evidence to show that additional similarly situated employees may exist, but have not come forward due to fear or intimidation. For example, Mr. Cummings, who previously expressed interest in joining this action, later stated that he was told his participation in the action would "break" the company and would be taken out on the employees. Sullenger Affidavit, DN 16-6 at ¶¶ 9-10. Mr. Flener, who had also discussed

---

[3] Leanna Jones denies making this statement to Plaintiff.

6

interest in joining this action, ultimately declined to do so after he was offered the opportunity to return to work for Defendant at higher wages. Id. at ¶¶ 3-4. Plaintiff alleges that three out of six employees he contacted expressed a fear of retaliation. One employee stated that Defendant would "make my life a living hell," while another employee stated that he did not "want to get in the middle of it." Id. at ¶ 14. Although the Court expresses no opinion as to whether Defendant engaged in any misconduct, the Court does recognize that any statements made by Defendant to the putative plaintiffs may have a heightened potential for coercion or confusion because of the nature of the employer-employee relationship. *See Mevorah v. Wells Fargo Home Mortg.*, Inc., 2005 WL 4813532 at *4 (N.D. Cal. Nov. 17, 2005); *Oetinger v. First Residential Mortg. Network, Inc.*, 2008 WL 2168965 at *2 (W.D. Ky. May 23, 2008). Thus notice to putative plaintiffs may be especially appropriate under the circumstances in order to identify the putative plaintiffs and to apprise them of the pendency of this action.

In sum, Plaintiff has made a modest factual showing that he and the putative plaintiffs were subject to or are subject to a common policy or plan that may violate the FLSA. Plaintiff has shown, and Defendant has admitted, that employees were not compensated for travel time from the Murray Facility to the work site. Plaintiff has also made a modest factual showing that other employees were required to report to the Murray Facility prior to traveling to, and after leaving, the work site for the day. Finally, Plaintiff has shown that employees were not compensated for time spent waiting at the work sites, which may include compensable wait time. *See* 29 C.F.R. § 785.15. At this stage, a modest factual showing is all that is required for conditional certification. Accordingly, the Court will grant Plaintiff's motion for conditional certification of a collective action pursuant to § 216(b).

2. **Objections to the Proposed Notice**

Having determined that Plaintiff will be permitted to send notice to putative class members in this action, the Court now must determine the appropriate substance of that notice. *See Comer*, 454 F.3d at 546 ("The district court may use its discretion to authorize notification of similarly situated employees to allow them to opt in to the lawsuit."). Defendant has objected to the form of the proposed Notice proffered by Plaintiff. Defendant's specific objections will be addressed in turn.

First, Defendant objects to the second bullet of the notice which states that "The Court has allowed the lawsuit to be conditionally certified as a collective action on behalf of employees affected by this Shawn Jones Masonry policy." Defendant further objects to references to "policy" or "policies" throughout the notice. Defendant objects to the use of the term "policy" because Plaintiff has failed to show that there is any policy regarding reporting to the Murray Facility before traveling to the work site. The Court finds that the inclusion of this statement is not objectionable. Plaintiff is not required to prove the existence of a policy at this stage. It is sufficient that Plaintiff has alleged the existence of the policy and has provided some evidence that he and others were similarly subjected to such a requirement.

Second, Defendant objects to Plaintiff's creation of a multi-colored notice and requests for the red coloring to be removed to create a monochrome, black and white notice. The Court finds that Plaintiff's use of red in the notice is not objectionable. The color serves to bring a reader's attention to important points. It is not distracting or confusing.

Third, Defendant objects to the "Do Nothing" option's statement that if putative plaintiffs do nothing, they will get no benefit from the lawsuit. Defendant argues that, by including this statement, Plaintiff infers that the putative plaintiffs will receive benefits if they do opt-in to this action. The Court finds that this statement is not objectionable. It simply alerts readers to the

fact that if they do nothing, and this action succeeds, they will not share in any award. Defendant also argues that the explanatory text should be removed and replaced with: "You are permitted to file suit separately against Shawn Jones masonry for the same legal claims in this lawsuit. If you do so, your recovery will be limited to that lawsuit." Because the Court finds that the current explanatory language is less clear than the Defendant's proposed language, the Court will order Plaintiff's counsel to replace the explanatory language to read as follows: "If you do nothing and money or benefits are later awarded in this lawsuit, you will not share in those. You are permitted to file suit separately against Shawn Jones masonry for the same legal claims in this lawsuit. If you do so, your recovery will be limited to that lawsuit."

Fourth, Defendant objects to the explanatory text to Question 6 in the "Your Rights and Options" section. Specifically, Defendant objects to the language "and may be jeopardizing your right to sue" because it contends that nothing would jeopardize a current or former Laborer's right to sue if the Laborer elects not to participate in this action and instead files his own lawsuit with another attorney. The Court finds Defendant's objections to be reasonable in that the language does not explain how a putative plaintiff's right to sue may be jeopardized. Plaintiff shall clarify that an employee's claims may be subject to a statute of limitations.

Fifth, Defendant objects to the explanatory text to Question 7 in the "Your Rights and Options" section. Defendant contends that the first paragraph of the text should include a statement that if the putative plaintiff does nothing, he or she will be permitted to file an individual lawsuit on his or her own behalf. The Court finds that such a statement in the first paragraph is unnecessary, as the second paragraph of the explanatory text explains that an individual can file his or her own lawsuit against Shawn Jones Masonry. Defendant further objects to the language stating that individuals who do not opt in will be required to "hire and

9

pay your own lawyer." The Court finds this objectionable to be reasonable. Plaintiff shall omit "and pay" from the above language.

Sixth, Defendant objects to Question 8 and its answer in its entirety as unwarranted. The Court finds the wording of Question 8 to be objectionable; however, the Court finds that the inclusion of the explanatory text to be warranted, regardless if Plaintiff has failed to prove impropriety on Defendant's part. The explanatory text makes clear that Defendant cannot retaliate against an employee for exercising his or her rights under the FLSA. Plaintiff shall eliminate Question 8, and place the explanatory text of Question 8 under Question 6.

Seventh, Defendant objects to Questions 10 and 11 as misrepresenting to the recipients that they are required to use the Sullenger Law Office to prosecute their claims in this lawsuit. The Court finds that the inclusion of Questions 10 and 11 are proper and do not contain such a misrepresentation. The explanatory text names the Sullenger Law Office as the firm currently representing Plaintiff in this action, and makes clear that any putative plaintiff who joins this action may hire their own lawyer. However, the Court does find that language "you will have to pay that lawyer" to be objectionable. Plaintiff shall replace that language with "you will have to hire that lawyer." Additionally, Plaintiff shall eliminate the following sentence: " It is experienced in handling similar cases against other employers."

Eight, Defendant objects to the reference to Mr. Sullenger's law firm's website in the notice as it amounts to marketing material. The Court finds that the inclusion of the firm's website is not objectionable. The website is provided so putative plaintiffs find information about the attorney and the law firm before deciding if they want to hire their own attorney or allow Mr. Sullenger to represent them.

Finally, Plaintiff shall eliminate the bold text "Any questions?  Read on or contact the attorneys listed at the end of this notice" that appears at the end of page 1 of the notice.  Plaintiff additionally should change the wording of Question 3 under the Basic Information section to state: "What does this lawsuit allege?"

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification of this collective action is GRANTED.  Within twenty-one (21) days after entry of this Order, Defendant shall identify and provide a complete list of all individuals it employed as Laborers from July 8, 2008 to the present, including the name, last known phone number(s), and the last known address.  Plaintiff shall make all ordered changes to the proposed notice in accordance with the Court's instructions above.  Within two weeks after Plaintiff receives the complete list of individuals employed as Laborers from Defendant, Plaintiff shall send the Notice and Consent Form to all individuals employed by Defendant as a Laborer from July 8, 2008 to the present.  After notice is disseminated, potential plaintiffs shall have up to and including four weeks to opt-in to this action.

IT IS SO ORDERED.