IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

MICHAEL HATHAWAY, *On Behalf of* )
*Himself and All Others Similarly Situated,* )
                                                 )
                 Plaintiffs, )
                                                 )  Case No.:5:11-cv-00121-TBR
v. )  JURY DEMAND
                                                 )
SHAWN JONES MASONRY, )
                                                 )
                 Defendant. )

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR FINAL
CERTIFICATION OF COLLECTIVE ACTION AND FOR PARTIAL SUMMARY
JUDGMENT AS TO LIABILITY**

      COMES NOW the Defendant, Shawn Jones Masonry, by and through their undersigned

counsel, and files this Memorandum In Opposition to Plaintiffs' Motion for Final Certification of

Collective Action And For Partial Summary Judgment. The Court should not grant final

certification of this matter as a collective action because the opt-in Plaintiffs and Plaintiff

Hathaway do not qualify for a collective action under the Fair Labor Standards Act ("FLSA").

The Defendant also requests the Court to deny Plaintiffs' motion for partial summary judgment.

## INTRODUCTION

      This law suit was originally filed by Plaintiff Michael Hathaway on behalf of himself and

all other individuals that Shawn Jones Masonry ("Defendant") employed as laborers.  Shawn

Jones Masonry is a self employed brick layer.  Three other opt-in Plaintiffs, Michael Flener,

David Henson, and Alfredo Rocha, joined this lawsuit.  Michael Hathaway and the other opt-in

Plaintiffs are together referred to as Plaintiffs ("Plaintiffs").

Plaintiffs worked for the Defendant at various job sites.  While Michael Hathaway and Michael Flener worked for Defendant for a comparatively longer period, the other two opt-in plaintiffs worked for a very brief period.  The Defendant compensated the laborers for all work hours.  The work hours began when Defendant's foreman declared the workday started and he workers were asked to begin working.  (*See* Defendant's Resp. to Plf.'s 1st Int. and RPDs).  The work day continued until either weather conditions became unsuitable for additional work or the passage of eight hours, at which time the foreman called the end of the work day.  (*See* Dft's Resp. to Plf's 1st Int. and RPDs at 5 If 11; Dft's Resp. to Plf's 1st Req. for Adms. at 5 If 22). Under either scenario, Defendant stopped paying the employees once the foreman called that work was done for the day. *See* (Dft's Resp. to Pltf s 1st Ints and RPDs at 5 If 11; Dft's Resp. to Pltf s 1st Req. for Adms. at 5 If 20).

Plaintiffs allege that they are "similarly situated" and have moved to certify the class as well as partial summary judgment claiming damages from the Defendant.  Some of the plaintiffs allege that they are similarly situated because they were not paid for the time they waited before getting the day start signal from Defendant's foreman.  Others state that they were not paid for riding in the company van to and from Defendant's job sites.

## ARGUMENT

**I.   THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR CLASS CERTIFICATON BECAUSE THE REQUEST DOES NOT MEET THE FLSA COLLECTIVE ACTION STANDARD.**

The Plaintiffs have failed to show that their proposed FLSA collective action is entitled to conditional certification and consequently the Court should deny the request for class certification.

-2-

A collective action under the FLSA "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing . . . ." 29 U.S.C. § 216(b). Plaintiffs who seek to certify a collective action under the FLSA "bear the burden to establish that they and the class they wish to represent are similarly situated." *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 362 (D.C. Ala. 1999).

The statutory standard for bringing a collective action under the FLSA is that the opt-in plaintiffs are "similarly situated," which does not mean plaintiffs need to be identical, but does require a showing that opt-in plaintiffs are similarly situated to the lead plaintiff. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir.2009). However, the first stage review may be more stringent depending on the particular circumstances of a case. For example, where some discovery has taken place, the court may require a proposed class of plaintiffs to make a "modest plus" factual showing that they are similarly situated to the named plaintiffs. (See *Creely v. HCR ManorCare Inc.,* 789 F.Supp.2d 819, 826–27 (N.D. Ohio 2011).

The second stage review, however, is more stringent as it occurs after discovery has been completed and requires the district court to "examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d at 547. At this point, the court considers all the evidence, in conjunction with the demographic data of the putative opt-in plaintiffs, to determine whether the assembled class may continue as a collective action or whether the putative class should be decertified, leaving plaintiffs free to pursue their claims individually. "[T]he question is simply whether the differences among the Plaintiffs outweigh the similarities of the practices to which they were

allegedly subjected." *Monroe v. FTS USA, LLC*, 763 F.Supp.2d 979, 994 (W.D.Tenn.2011).

The primary factors considered during second-stage analysis are: (1) the disparate factual and

employment settings of the individual opt-in plaintiffs; (2) the various defenses available; and (3)

fairness and procedural considerations. *Frye v. Baptist Mem'l Hosp., Inc.*, 2012 WL 3570657, at

*3 (6th Cir.2012).

Not every common issue will make a case suitable for certification. Rather, what is

necessary for certification are common issues the resolution of which will advance the litigation.

*Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

In the case at hand, Plaintiff Hathaway and the other three opt-in plaintiffs set forth four

different set of facts or bases on which they claim compensation from the Defendant.

### A.      <u>Plaintiffs are not similarly situated.</u>

**Michael Hathaway**

Michael Hathaway's (Mr. Hathaway) job ranged from 11 to 104 days. (Pltf's Mem. in

Sppt. of Mot. for Final Certification P.5 ¶ 1).  Mr. Hathaway alleges that he was not compensated

for the time he rode in the company's van to and from the job sites.  (Pltf's Mem. in Sppt. of

Mot. for final certification P. 1).  He alleges that he was forced to ride in the company van as a

condition of employment.  He further alleges that the Defendant violated the FLSA by refusing to

pay him for the time he waited for the foreman to declare the workday underway.

Mr. Hathaway states that he rode to the work site in the company van every single day of

his employment.  (*See* Pltf's Resp. to Dft's 1st Ints and RPDs at 8 ¶ 13).  However, he refused to

provide any evidence to support his position that he was required to ride in a company van to the

jobsite.  His response was that once the matter enters the merits discovery stage, he would

-4-

provide an appropriate response.  (*See* Pltf's Resp. to Dft's 1st Ints and RPDs at 8 ¶ 12).  The Defendant purchased a company van only to facilitate employees to travel to and from work sites. Employees were never forced by the company to ride in the company van.

Mr. Hathaway claims compensation for the time period he waited for the workday to begin.  He alleges that for the Defendant, "[t]he work day begins when an employee arrives to [sic] a job site and conditions are suitable for working." (*See* Dft's Resp. to Pltf's 1st Ints and RPDs at 5 ¶ 11).  The company actually paid the employees from the time the foreman declared the workday to run, irrespective of whether the laborers physically began labor.  (Dft's Resp. to Pltf's 1st Req. for Adms. At 5¶ 19 ).  The work day continued until either weather conditions became unsuitable for additional work or the passage of eight hours, at which time the foreman declared that the work was done.  (*See* Dft's Resp. to Pltf's 1st Ints and RPDs at 5 ¶ 11; Dft's Resp. to Pltf's 1st Req. for Adms. at 5 ¶ 22).  Under either scenario, Defendant stopped paying the employees once the foreman declared that the work day ended.  (*See* Dft's Resp. to Pltf's 1st Ints and RPDs at 5 ¶ 11; Dft's Resp. to Pltf's 1st Req. for Adms. at 5 ¶ 20).  Mr. Hathaway's main claim for compensation is that he was required as a condition of employment to ride it he company's van and should be compensated for travel time.

**Michael Flener**

Michael Flener (Mr. Flener) worked for the Defendant from August 2007 to March 2010 and March 2011 to April 2012. (*See*  Pltf's Resp. to Dft's stage II Ints and RPDs P. 4. Int No. 5). In Mr. Flener's Declaration, he admitted that he was told by the Defendant that he could drive his own vehicle to the job or ride in a company vehicle. This is in direct contravention to Mr. Hathaway's claims.  (*See* Decl. Michael Flener ¶ 3).   Due to the distance to the jobs, Mr. Flener

decided to ride in the company vehicle.  Because of Mr. Flener's personal and voluntary decision

to ride in the company van, Mr. Flener had to drive to the Company's Murray facility every

morning, arriving around 4:30 a.m.  Mr. Flener admits that he was not asked to ride in the

company van. (*See* Pltf's Resp. to Dft's stage II Ints and RPDs P. 4. Int No. 2).  Once the

equipment was loaded, Mr. Flener and other laborers boarded the company truck and left for the

job site by around 5:00 a.m. *Id.*

Mr. Flener alleges that he was not paid for any of his time waiting to board the company

vehicle, as their compensation started only when the foreman declared the workday begun and

ended when the foreman declared the work completed for the day.  This is a separate and distinct

allegation that of the one raised by Mr. Hathaway who alleges he should have been paid from the

time he arrived at the workplace and got in the van.  Mr. Flener also alleges that on days of bad

weather, the Defendant still required him to ride its van to the job site and they would sit in the

van for approximately two hours. If the weather was still bad, the foreman would cancel the job

for that day and the truck would return them to the company's facility.  For such occasions they

did not get any pay for the day. (Decl. Michael Flener ¶ 4.). Therefore, Mr. Flener claims

compensation for voluntarily riding in the company van and for having to wait in the van for the

work day to begin, which is different than Plaintiff Hathaway.

**David Henson**

David Henson ("Mr. Henson") worked only briefly for Defendant at jobs near his home.

Plaintiff David Henson worked briefly two jobs with the Defendant, (*See* Henson's Resp. to

Dft's Stage 2 Ints. and RPDs at 5 – 6 ¶¶ 6, 8).   Mr. Henson chose to drive himself to the job site

rather than driving himself to the company's facility and then riding the company van to the job site, because it was faster to drive directly to the job site.

Mr. Henson alleges that he was not paid for all the hours he worked. Mr. Henson asserted that he should be compensated from the time he arrived at the job site early. Mr. Henson was only told to arrive at the jobsite on time, not early. Mr. Henson was not compensated while he waited for the foreman to declare the work day underway. His allegations are different than the allegation made by either Hathaway or Flener.

**Alfredo Rocha**

Alfred Rocha ("Mr. Rocha") worked for Defendant for a very short period. Mr. Rocha worked only one job for Defendant, which was located near his home in northwest Tennessee. (*See* Rocha's Resp. to Dft's Stage 2 Ints. and RPDs at 4 – 5 ¶¶ 6, 8). Mr. Rocha drove his own vehicle to the work site but allegedly was asked to appear on site before the official start of the work day. Mr. Rocha waited for the rest of the employees riding the company van to arrive and for the foreman to declare that the work day started at 7:00 a.m. Mr. Rocha also alleges that he was not paid for his overtime. Rocha's allegations are also different and distinct from Hathaway and Flener.

District courts have based their final-certification decisions on a variety of factors, including the "factual and employment settings of the individual [p]laintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action." *See* 7B Wright, Miller, & Kane, Federal Practice and Procedure, § 1807 n. 65 at 497. The lead plaintiffs bear the

burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs. See 7B Wright, Miller, and Kane, *supra*, § 1807 at 476 n. 21.

In the instant case, the lead Plaintiff's situation differs from that of the other three opt-in plaintiffs. All four plaintiffs differ from each other in terms of the period of employment with the Defendant Company, the job sites they worked on, and their various factual allegations against the company.

While Mr. Hathaway alleges that the Defendant forced him to ride the company van to the job sites, the other three opt-in plaintiffs agree that they had the option to decide their own means of transportation to the job site and that they were not forced to ride in the company van. Mr. Henson and Mr. Rocha traveled to the job site in their own private vehicles. Only Mr. Hathaway and Mr. Flener rode in the company van. This is an essential element of plaintiffs' claim and basis for receiving compensation. However, their factual allegations greatly differ on this very point.

The Plaintiffs allege that they did have common ways by which the Defendant violated FLSA as they are all seeking to claim compensation for overtime premium for working more than forty hours in a work week. But it is worth noting the causes for this claim differ from one another. The plaintiffs' admission that some minor variations exist between the specific experiences of the four Plaintiffs strengthens the Defendant's argument that the Plaintiffs are not similarly situated.

The U.S. Court of Appeals for the Sixth Circuit, in *Frye v. Baptist Memorial Hospital, Inc.*, 2012 U.S. App. LEXIS 17791 (6th Cir. 2012), upheld decertification of an FLSA collective action challenging the use of an automatic 30-minute deduction for unpaid meal breaks. The

district court granted decertification, finding the plaintiff failed to show the class members were similarly situated.  The district court first noted that the opt-ins were subject to disparate factual and employment settings, as they worked in varied departments and positions. These differences in employment settings bore directly on the frequency, duration, and reason for any work performed during meal breaks. The district court also found that the opt-in plaintiffs' otherwise disparate claims were not tied together by a common violation. Although the plaintiff sought to rely on the automatic deduction policy itself as the common thread, the district court rejected this argument, noting that automatic deduction policies are lawful under the FLSA.  Thus, the plaintiff needed to demonstrate that the hospital implemented its policy in such a way as to violate the FLSA.  In holding the plaintiff could not make such a showing, the district court found that the vast majority of opt-in plaintiffs were aware of the policies for reporting work during meal breaks, were paid when they reported such work, and were not discouraged from or retaliated against for reporting work performed during meal breaks.  On appeal, the Sixth Circuit affirmed the district court's decision.  Regarding decertification, the Sixth Circuit agreed that the plaintiff's evidence was insufficient to demonstrate that opt-in plaintiffs were similarly situated and experienced a common FLSA violation.  The case at hand involves even more disparate factual and employment settings and unlike *Frye v. Baptist Memorial Hospital, Inc.,* the case at hand involves more than one employment policy.  There are multiple issues, including but not limited to: whether the workday begun and ended when the foreman declared so and whether employees were required to ride the defendant van to job sites.

In *Sheffield*, a district court denied conditional certification for a proposed collective action under the FLSA because it "would be mired in particularized determinations of liability

and damages, rather than collective consideration of common questions of law and fact." 211

F.R.D. at 413. It is worth noting that the district court's determination in *Sheffield* was based,

however, on the fact that the employees and putative collective action members "ha[d] been

employed by different subsidiaries and affiliates" of the defendant and had "worked at nine

different job sites." *Id.*  In the case before us, the plaintiffs did not even work at the same job

sites.  Two plaintiffs worked for such a short time that they have been to only a few job sites

whereas Mr. Hathaway has been to many more job sites with Defendant.

In *Dudley v. Texas Waste Systems, Inc.,* No.05-078, 2005 WL 1140605 (W.D. Tex. May

16, 2005), a district court denied conditional certification for a proposed collective action

because it found that the plaintiff had failed to present any evidence "refuting [the defendant's]

written policy that employees were admonished to take their lunch breaks."  Likewise, in this

case, it was the Defendant Company's policy that the workday began when the foreman declared

so.   The Plaintiffs have not presented any evidence to refute the Defendant's policy regarding

declaration of the start of work day.

In light of facts and law above-mentioned, the court should dismiss the plaintiffs' claim

for class certification after considering all the evidence, the disparate factual and employment

settings of each Plaintiff and determine that the assembled class is not entitled to continue a

collective action and declaring that the putative class should be decertified leaving the plaintiffs

free to pursue their claims individually. The disparate factual and employment settings of the

individual plaintiffs in this case would also necessitate different defenses from Defendant.  There

would be no degree of fairness and procedural impact of certifying the present action as a

collective action.

-10-

The Court should deny final certification of this matter as a collective action because Plaintiffs have failed to demonstrate that they are 'similarly situated' for purposes of proceeding as a class.

## II.   PLAINTIFFS ARE NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT AS THEY FAILED TO ESTABLISH THAT THERE ARE NO GENUINE ISSUES OF MATERIAL FACT.

Summary judgment is proper only when "there is no genuine issue as to any material fact [such that] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Id.* The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling* Co., 12 F.3d 1382, 1388–89 (6th Cir.1993). Moreover, the court "must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In the instant case, Plaintiffs seek compensation for additional work hours. However, the basis for which they claim compensation for additional work hours differ widely and include: travel time to the company's job sites; waiting time until the work day is declared started; pay for days when work is not performed after arriving to the work site due to adverse weather conditions; waiting time on such days of bad weather; pay for loading; and pay for cleaning after

-11-

the work day was called off.  The disparate factual and employment settings are as applicable

between the lead and opt-in plaintiffs.  Further, as is evident below, there are numerous genuine

issues of material fact.

Mr. Hathaway claims he should have received compensation for riding in the company

van to the jobsite, for loading the truck, and for waiting the workday to begin.  He stated that

Leanna Jones told him to be at the shop fifteen minutes before 5:00 every morning to get on the

company van.  (*See* Pltf's Resp. to Dft's 1st Ints and RPDs at 8 ¶ 14, Page 4 of the Plaintiffs

Memo in Support of its Motion for Final Certification and Partial Summary Judgment).  The

Defendant denies this allegation.  (*See* Defendant's response to Plaintiff's First Set of RFA,

Response 10,11.)

Further on page 4 of the memorandum in support of the motion, Mr. Hathaway says that

he was ordered to load equipment.  (*See* Page 4 of the Plaintiffs Memo in Support of its Motion

for Final Certification and Partial Summary Judgment).  But Mr. Hathaway contradicts this

statement by stating later on Page 13 in the memorandum that he had the option to either load

equipment or wait in the van.  Mr. Hathaway further alleges that he had to clean up at the job site

after the day was called off.  (*See* Plaintiffs Memo in Support of its Motion for Final Certification

and Partial Summary Judgment, pg. 13).  The Defendant denies this allegation and has indicated

that all cleaning up was done during the work day.  (*See* Defendant's response to Plaintiff's First

Set of RFA, Response 26.)

Mr. Flener claims that he was asked to arrive at the company facility to board the

company van at 4:30 a.m. and that the company van reached the job site at 6:30 a.m.  But Mr.

Flener was not compensated until the work day began at 7:00 a.m., if the weather conditions

were fine.  Regarding Mr. Flener, in the Plaintiffs' Motion for Class Certification and Partial Summary Judgment, it is alleged that Mr. Flener was required to perform actual work at the facility to load equipment.  (*See* Pltfs. Mem. In suppt. Of Mot. For Cert. P. 11  A.). On the other hand, in Mr. Flener's declaration he states that, "[o]nce the equipment has been loaded, the other laborers and I would board the company truck and leave for the job site at approx 5 am. (Page 2 Para 3).  "We were not paid for the period from the time we began loading the van until we arrived at the job site and the foreman declared the work started." (Para 4 Page 2). Then on paragraph 5 of the Declaration, Mr. Flener states that "once the foreman declared the work done for the day, various laborers would load the equipment."  So, Mr. Flener himself makes contradicting statement regarding the loading work he performed at the facility.

He further alleges that he had to wait in the truck for as long as 2 hours before the foreman declared the work day called off due to bad weather condition.  (*See* Michael Decl at 6). The Defendant states in its response that it did not ask any employees to wait in the company van.  (*See* Defendant's response to Plaintiff's First Set of RFA, Response 23).  Mr. Flener admits that he was told he did not have to ride in the van and that he could choose any other means of commuting to the job site.

Mr. Henson and Mr. Rocha admit that they were allowed to drive their personal vehicles to job sites as well.  They allege that they were not paid for the time they waited for the workday to be declared as begun.  However, the Defendant states that Mr. Rocha and Mr. Henson were required to be present at the job site only by 7:00 a.m.  When they were told to arrive at the jobsite is clearly is a question of fact.

-13-

There are multiple factual disputes such as who was required to ride in the van, were they required to perform work prior to riding in the van, when were they required to arrive at the jobsite, and when did the workday actually begin and end.  There are all questions of fact warranting a denial of the Plaintiff's motion for partial summary judgment.

A.   **Travel time to the work site is non-compensable.**

There is much legal support for the proposition that travel time to a company's job site is not compensable.  For example, in *Schwab v. Bernard* Slip Copy, 2012 WL 1067074 N.D. Ohio, 2012, the court observed that, "Travel time is generally not considered a principal activity of employment. An employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal 'home to work' travel; such travel is not hours of work." 5 C.F.R. § 551.422(b).

The Plaintiffs contend that the travel to the work site was a lengthy travel, and lengthy travel is not part of a normal commute and, as such, is compensable.  The phrase "normal travel" is not an objective standard of how far most workers commute or are reasonably expected to commute, but rather "a subjective standard, defined by what is usual within the confines of a particular employment relationship." *Kavanagh v. Grand Union Co., Inc.*, 192 F.3d 269, 272 (2d Cir.1999); accord *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1286 n. 3 (10th Cir.2006). *Schwab v. Bernard* Slip Copy, 2012 WL 1067074 N.D.Ohio, 2012.  Accordingly, home-to-work travel that is "a contemplated, normal occurrence" of the employment relationship is viewed as "normal travel" under the regulation, despite the length of the commute. *Id.* (quoting *Kavanagh*, 192 F.3d at 273).

-14-

Commuting time is noncompensable "regardless of the length" of the commute as long as it "was a contemplated, normal occurrence" of the employment relationship. *Kavanagh v. Grand Union Co.,*192 F.3d 269, 272 (2d Cir.1999); see *Smith v. Aztec Well*, 462 F.3d at 1286 n. 3 (denying compensation for seven-hour commutes to remote oil drilling rigs); *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir.1994) (denying compensation for lengthy commute by farm workers). *Dekker v. Construction Specialties of Zeeland, Inc.* Slip Copy, 2012 WL 726741, .D.Mich.,2012. Carpooling from a central meeting place, rather than directly from home, even in a company vehicle, remains a commute where the employees choose to do so for their own convenience. *Smith v. Aztec Well*, 462 F.3d at 1288. *Id.*

Further, the regulations provide that travel from home to work is compensable if such compensation is required by a written or unwritten contract or a custom and practice in effect at the time. 29 C.F.R. § 254(b).  Therefore, "[T]he determination of whether walking, riding, or traveling time is compensable, like the determination of whether an activity is preliminary or postliminary, must turn upon fact." (citing *Carter v. Panama Canal Co.,* 314 F.Supp. 386 (D.D.C.1970), (citation omitted).  In the case at hand, there was no custom or written contract between the Plaintiffs and Defendant indicating that the travel time compensable. To the contrary, the agreement between Defendant and Plaintiffs was that travel time in the company van would not be compensable and this was being done for the convenience of the employees that either had difficulty traveling to the job site or preferred carpooling with the company for economical purposes.

    B.    **The workday began at foreman's declaration and not when Mr. Hathaway and Mr. Flener arrived at Defendant's facility.**

Section 254 of Title 29 of the United States Code deals with activities that are not compensable. The section more specifically reads as follows:

(a) Activities not compensable

Except as provided in subsection (b) of this section, no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], the Walsh-Healey Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

**(1)** walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

**(2)** activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

(b) Compensability by contract or custom

-16-

Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to any activity, the employer shall not be so relieved if such activity is compensable by either--

**(1)** an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

**(2)** a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

In *Loodeen v. Consumers Energy Co*, Not Reported in F.Supp.2d, 2008 WL 718136 W.D. Mich., 2008, the court addressed the effect of the Portal-to-Portal Act on determination of hours worked.  According to the court, the Supreme Court has explained that pursuant to the Portal to Portal Act, "activities performed either before or after the regular work shift, on or off the production line, are compensable ... if those activities are an integral and indispensable part of the principal activities for which the covered workmen are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S.Ct. 330, 100 L.Ed. 267 (1956).  Under *Steiner's* interpretation of the Portal to Portal Act, the work activities must be both integral and indispensable. See *IBP, Inc. v. Alvarez*, 546 U.S. 21, 40-41 (2005) . "The fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a principal activity under *Steiner*". In this context, "integral" has been defined as "essential to completeness," "organically joined or linked," and "composed of constituent

-17-

parts making a whole," while "indispensable" has been defined as "necessary." *Gorman v. Consolidated Edison Corporation*, 488 F.3d 586, 592 (2nd Cir.2007). The fact that certain preshift activities are necessary (such as time spent waiting to don the first piece protective gear that marks the beginning of the workday at a factory), does not make such activities "integral and indispensable" under *Steiner*; *Gorman*, 488 F.3d at 593 (waiting in line at a vehicle entrance for security checks prior to entering nuclear power station to commence work is necessary but not integral to the employee's work at the station); *Aiken*, 190 F.3d at 758 (ordinary commute time of police canine officers which may include time spent disciplining the dog and monitoring a police radio may be necessary but not compensable). Therefore, in order to constitute compensable hours, the activity involved during the overtime claimed shall be "integral and indispensable" to the "principal activities."

The various bases under which Plaintiffs claim compensation can in no way be considered 'integral and indispensable' to the principal activity they performed at the work site. Plaintiffs cite to 29 C.F.R. § 785.38 to contend that the travel time to job site is compensable. But it is important to note that 29 C.F.R. § 785.38 provides only the time spent by an employee in travel as part of his 'principal activity' - such as travel from job site to job site during the workday - must be counted as hours worked. This is factually different from the situation in our case where Mr. Hathaway and Mr. Flener rode in the company van to the job site only as a means to commute to the work site. The principal activity of neither the Defendant nor Plaintiffs' work was transportation – the transportation was just a means to arrive at the job site to conduct entirely different work. The company had purchased the van only to transport the workers because many of them either didn't have driver's licenses, reliable transportation or wanted to

save the gas money traveling back and forth to the jobsites. They were never required to ride in the van.  Furthermore, the workday started only after the foreman declared the workday had begun.  So, Mr. Hathaway's and Mr. Flener's riding in of the company van to the job sites cannot be considered part of their principal activity.

Moreover, under 5 CFR § 551.422, the time spent traveling shall be considered hours of work only if: (1) An employee is required to travel during regular working hours; (2) An employee is required to drive a vehicle or perform other work while traveling; (3) An employee is required to travel as a passenger on a one-day assignment away from the official duty station; or (4) An employee is required to travel as a passenger on an overnight assignment away from the official duty station during hours on non-work-days that correspond to the employee's regular working hours.

In the instant case, Plaintiffs themselves allege that they were required to wait to work until the foreman declared the work day to begin.  So, it is clear beyond doubt that none of the Plaintiffs traveled during regular working hours. Further, no Plaintiffs claim that they qualify for travel time pursuant to the provisions of 5 CFR § 551.422(3) or (4). Consequently, Mr. Hathaway and Mr. Flener do not qualify for travel time compensation.  While considering the case *Aiken v. City of Memphis*, Tenn. United States District Court, W.D. Tennessee, Western Division. August 8, 1997 985 F.Supp. 740, the court held that police officers are not entitled to compensation for time spent commuting to and from work in police vehicles or for time spent keeping these vehicles clean or scheduling their maintenance.

The Sixth Circuit has summarized an employer's duty under the FLSA in *Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904 (2002) as the FLSA requires employers to pay at least a

specified minimum wage for each hour worked, see 29 U.S.C. § 206, and overtime compensation for employment in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1).  Although the term "work" is not defined in the statute, the Act defines "employ" to mean "to suffer or permit to work." *Id.* § 203(g); *see also* 29 C.F.R. § 785.6.  The Supreme Court has defined work to include any time "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  *Tennessee Coal, Iron & R. Co. v. Muscoda Local* No. 123, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944) (footnote omitted). However, the Portal to Portal Act, which amends the FLSA, modified this judicial construction of hours worked to exclude from compensation activities that are "preliminary to or postliminary to said principal activity or activities." 29 U.S.C.A. § 254(a)(2) (West 1998); *Aiken v. City of Memphis*, 190 F.3d 753, 758 (6th Cir.1999). *Chao*, 310 F.3d at 907.  Therefore, in the case at hand the plaintiffs overtime or waiting time does not come under work time as it is not "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."

The court in *Bay Ridge Operating Co. v. Aaron,* Supreme Court of the United States June 7, (1948) 334 U.S. 446, observed that "the definition of overtime premium thus becomes crucial in determining the regular rate of pay.  We need not pause to differentiate the situations that have been described by the word 'overtime.'  Sometimes it is used to denote work after regular hours, sometimes work after hours fixed by contract at less than the statutory maximum hours and sometimes hours outside of a specified clock pattern without regard to whether previous work has been done, e.g., work on Sundays or holidays." The *Bay Ridge* court further observed that overtime premium is that extra pay for work because of previous work for a specified number of

hours in the workweek or workday.  Here, the plaintiffs claim does not stand as they were not able to show any material evidence that they were being made to work beyond the 40 hours per week as alleged.

### C.   <u>Waiting time is non-compensable.</u>

Waiting time is not compensable if employees are "waiting to be engaged" rather than "engaged to wait." 29 C.F.R. § 785.14.  Whether waiting time is for the benefit of the employer or the employee depends on all the circumstances of the case, including: (1) the extent to which an employee's free will is constrained during the waiting time, (2) the extent to which the employer actually benefits from the waiting time, (3) whether the agreement and understanding between the employer and employee indicate that waiting time will be compensated, and (4) whether the employer requested or required that the employee wait.  *Bernal v. TrueBlue, Inc*, 730 F.Supp. 2d 736, 741 (W.D.Mich.2010) (citing cases). *Dekker*, Slip Copy at 4.

In the instant case, the Defendant does not owe Plaintiffs compensation for time spent waiting at job sites due to weather or any other delays because Plaintiffs were "waiting be engaged."

Plaintiffs have not presented any evidence that they were restricted by the Defendant to move freely if weather or other issues affected the start of their workday. Plaintiffs contend that they often had to wait when they first arrived at the job site because Defendants required them to begin their travels earlier than was necessary. They also contend that they were often required to remain at the job site because it was unclear when work would begin and they had to be present on site when the general contractor was ready for them. The Defendant disputes these factual

-21-

allegations. At the least, because of the genuine issues of material fact between the Defendant Plaintiffs, the court should deny Plaintiffs motion for partial summary judgment.

In *Bernal v. Trueblue, Inc.* United States District Court, W.D. Michigan, Southern Division. June 25, 2010 730 F.Supp.2d 736, the district court held that time spent by employees waiting in the dispatch office prior to the start of an assignment was not compensable; time spent by employees in traveling from to customer's location was not compensable; and time spent by employees in traveling from a customer's location was not compensable.

In *Bernal*, the court observed that, "Under both federal and state law, all employers, must pay their employees no less than a statutorily defined rate for each hour that the employer "suffer[s] or permit[s]" the employees to work. 29 U.S.C. §§ 206, 203(g); Mich. Comp. Laws §§ 408.383, 382(d).  An employer does not suffer or permit an employee to work unless the employee is engaged in the "principal activity of employment." 29 U.S.C. § 254. Waiting time can be considered part of the principal activity of employment, *Chao v. Akron Insulation & Supply, Inc.,* 184 Fed.Appx. 508, 511 (6th Cir.2006) (unpublished); *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir.1994) (citing 29 U.S.C. § 254), if the workers are "engaged to wait" rather than "waiting to be engaged." 29 C.F.R. §§ 785.14-.16.

In determining whether an employee is engaged to wait, or waiting to be engaged, the critical inquiry is whether the time spent waiting is primarily for the benefit of employer or the employee.  *See Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944). However, whether waiting time is for the benefit of the employer or the employee depends on all the circumstances of the case.  *Armour,* 323 U.S. at 133, 65 S.Ct. 165; *Skidmore v. Swift*, 323 U.S. 134, 136-37, 65 S.Ct. 161, 89 L.Ed. 124 (1944); 29 C.F.R. § 785.14. Nevertheless, courts

consider several non-controlling and non-exhaustive factors in determining whether waiting time is predominately for the benefit of the employer or employee. First, courts consider whether the agreements and understandings between the employer and employee indicate that waiting time will be compensated. *Skidmore*, 323 U.S. at 137, 65 S.Ct. 161; 29 C.F.R. § 785.14. Second, courts consider whether the employer requested or required that the employee wait. *Vega*, 36 F.3d at 426 ("Waiting benefits the employer when it is requested or required by the employer."); *Irwin v. Clark*, 400 F.2d 882, 883-84 (9th Cir.1968). Third, courts consider the extent to which an employee's free will is constrained during the waiting time. *Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir.1992) ("The question of whether the employees are working during this time for purposes of the FLSA depends on the degree to which the employee may use the time for personal activities."); *Halferty v. Pulse Drug Co., Inc.*, 864 F.2d 1185, 1189-90 (5th Cir.1989) ( "[T]he critical issue in determining whether an employee should receive compensation for idle time is whether the employee can use the time effectively for his or her own purposes."); 29 C.F.R. § 785.14-.17. Finally, courts consider the extent to which the employer actually benefits from the waiting time. *See,* e.g*., Irwin v. Clark*, 400 F.2d 882, 883 (9th Cir.1968) (finding waiting time non-compensable where, "while thus waiting, the plaintiffs performed no services for the employer").

Plaintiffs contend that the company required Mr. Hathaway and Mr. Flener to report to its facility where they would either load equipment or wait while other employees did so, before they could get their work day started. From the 29 C.F.R. § 785.38 example that plaintiff cited, it is clear that the Plaintiff is entitled to compensation only if he was required to do so. In this case, Mr. Flener and Mr. Hathaway alleged that they were required to be at the company facility

approximately at 4:30 a.m. and 4:45 a.m. respectively.  This is strongly disputed by the

Defendant.  Mr. Flener and Mr. Hathaway had to be at the company facility at that time because

they chose to ride in the company van to commute to the job site.  They had to ensure that they

reached the facility before the company van left.  With regards to Mr. Henson and Mr, Rocha,

they were required to be at the job site only by seven and not earlier.

In view of the above, it is quite clear that there exists genuine issues of material fact as to

the different claims alleged by Plaintiffs.  Further, Plaintiffs have failed to provide sufficient

supporting evidence to show that they have meritorious claim as alleged.

Plaintiffs have failed to satisfy the burden of establishing that there is no genuine issue of

material fact and that summary judgment is appropriate. Thus, the court should deny Plaintiffs'

motion for partial summary judgment.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' request to the certify this

matter as a collective action consisting of Plaintiff Hathaway and the three opt-in Plaintiffs -

Messrs. Flener, Henson, and Rocha.  The Defendant further requests that the court deny

Plaintiffs' motion for partial summary judgment.

This the 4th day of March, 2013.

Respectfully submitted,

By:/s/ Todd A. Farmer
    Todd A. Farmer, Esq.
    Farmer & Wright, PLLC
    P.O. Box 7766
    Paducah, KY 42002-7766
    (270) 443-4431

-24-

(270) 443-4631 (fax)
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2013, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

D. Wes Sullenger, Esq., Sullenger Law Office, PLLC, 1324 Jefferson Street, Paducah KY 42001; Attorneys for Plaintiffs

/s/ Todd A. Farmer

-25-