UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-121

MICHAEL HATHAWAY, *On Behalf of*
*Himself and All Others Similarly Situated,*                                    PLAINTIFF

v.

SHAWN JONES MASONRY,                                                            DEFENDANT

## AMENDED MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiffs' Motion for Final Certification of Collective Action and for Partial Summary Judgment as to Liability. (DN 41.) Defendant has filed a response, (DN 42), and Plaintiffs have replied. (DN 45.) Also pending before the Court is Defendant's Motion to Compel Discovery Responses, (DN 39), to which Plaintiffs have responded. (DN 40.) These matters are now ripe for adjudication. For the following reasons, Plaintiffs' Motion for Final Certification of Collective Action is GRANTED IN PART and DENIED IN PART, Plaintiffs' Motion for Partial Summary Judgment as to Liability is DENIED, and Defendant's Motion to Compel is DENIED as moot.

## BACKGROUND

Plaintiff Michael Hathaway ("Plaintiff" or "Hathaway") filed this FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and all individuals employed by Defendant Shawn Jones Masonry ("Defendant"). Plaintiff worked for Defendant as a laborer from July 2008 to May 2011. Plaintiff and other laborers performed various jobs to assist brick masons at construction sites such as assembling and disassembling scaffolds, supplying materials to masons, helping to operate a grout pump, and cleaning floors. Plaintiff was paid an hourly wage for his work and was not an exempt employee. In his complaint, Plaintiff contends that

Defendant violated §§ 207(a)(1) and 206(a) of the FLSA by failing to compensate laborers for non-commute travel time and other work performed after their work day had commenced.

According to Plaintiff, Defendant required him and the other laborers to arrive at the work facility in Murray, Kentucky ("Murray Facility") to prepare and load equipment onto a company truck before traveling to a designated job site for the day.[1] Upon arriving at the job site, if conditions were suitable for work, a foreman declared that the work day had begun. If the weather conditions were not suitable for work upon arriving at the work site, the employees would not be paid.[2] At the end of an eight-hour day, or when the conditions became unsuitable for work, a foreman would declare the work day over. Plaintiff contends, and Defendant admits, that he and the other laborers were only compensated for the hours recorded by the foreman while they actively worked at a job site. According to Plaintiff, after the foreman declared the workday over, he and the other laborers were required to load the equipment back on the company truck and then return to the Murray Facility before returning home for the day. Defendant denies this, contending that all clean-up work was done on the clock.

The Court conditionally certified Hathaway's claims as a FLSA collective action. *See Hathaway v. Shawn Jones Masonry*, No. 5:11-CV-121, 2012 WL 1252569, *2-4 (W.D. Ky. Apr. 13, 2012). Thereafter, three individuals joined this lawsuit and participated in the discovery process.[3] One goal of this discovery was to determine whether the opt-in plaintiffs were

---

[1] The distance between the Murray Facility and the job sites generally varied from 55 miles to 215 miles.
[2] If the weather conditions were not suitable, employees would wait until the conditions became suitable or until the job site was abandoned for the day. Plaintiff contends, and Defendant admits, that employees were not compensated for the wait time.
[3] Five other individuals joined the lawsuit. John Cummings opted in to the lawsuit just after it was filed, but later left a voicemail with Plaintiffs' counsel requesting removal. Jameson Collins opted in to the lawsuit but later sent a request to remove himself from the case. Three other individuals—Paul Pettis, Richard Edmond, and Patrick Giordano—opted in to the lawsuit but failed to respond to Defendants' written discovery. These three individuals are the subjects of Defendants' Motion to Compel, discussed below.

"similarly situated" to Hathaway. If the opt-in plaintiffs are not similarly situated, this case may not proceed collectively. Upon completion of discovery, Plaintiffs have moved the Court to grant final certification of this matter as a collective action. Plaintiffs further move for partial summary judgment as to liability, and contend this matter need only proceed to trial on the issue of damages.

## DISCUSSION

### I.

As a preliminary matter, Defendant has filed a Motion to Compel opt-in Plaintiffs Paul Pettis, Richard Edmond, and Patrick Giordano to answer his Interrogatories and Requests for Production of Documents. To date, these individuals have failed to respond to their counsel's requests to provide Defendant with responsive information. Because these individuals have failed to participate in discovery and there is no information from which to determine if they are similarly situated to Plaintiff Hathaway, the Court finds it appropriate to DISMISS these individuals WITHOUT PREJUDICE. In light of this dismissal, the Court also DENIES Defendant's Motion to Compel as MOOT.

### II.

The Court now moves to the issue of final certification. An employee alleging violations of the Fair Labor Standards Act may bring suit against his employer on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). A FLSA action on behalf of "similarly situated" employees is referred to as a "collective action." A FLSA collective action differs from a class action brought under Federal Rule of Civil Procedure 23. *See Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "Unlike class actions under Fed. R. Civ. P. 23, collective actions under FLSA require putative class members to opt into the class." *O'Brien*

*v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009). Furthermore, the standard for certifying a collective action is less stringent than that required for a class action. *Id.* at 584. To certify a class action under Rule 23, the class representative must show that "issues subject to generalized proof and applicable to the class as a whole *predominate* over those issues that are subject to only individualized proof." *Randleman v. Fid. Nat'l Title Ins. Co.*, 656 F.3d 347, 352-53 (6th Cir. 2011) (emphasis added). There is no "predominance" requirement for a FLSA collective action, and "opt-in plaintiffs only need to be 'similarly situated.'" *O'Brien*, 575 F.3d at 584.

In determining whether opt-in plaintiffs are similarly situated, the majority of district courts follow a two-step certification process. First, like the Court here, they conditionally certify the collective action after minimal discovery so that the lead plaintiff can issue notice to the putative class, allowing potential class members to opt into the action if desired. *See Hathaway v. Shawn Jones Masonry*, No. 5:11-CV-121, 2012 WL 1252569, *2-4 (W.D. Ky. Apr. 13, 2012). Second, after other plaintiffs have joined and additional discovery has been taken, courts conduct a final certification analysis to determine whether the plaintiffs are, in fact, similarly situated. At this stage, courts "require a higher level of proof than for initial conditional certification." 7B Charles Alan Wright, *et al.*, *Federal Practice & Procedure* § 1807 (3d ed. 2012). Here, certification "should not be based on any single factor in isolation, but on a variety of factors." *Id.* Indeed, in *O'Brien*, the Sixth Circuit stated that it was not "creat[ing] comprehensive criteria for informing the similarly-situated analysis." *O'Brien*, 575 F.3d at 585. The court did, however, identify three factors that are often examined in the second step of the certification analysis: 1) the factual and employment settings of the individual plaintiffs, 2) the different defenses to which the plaintiffs may be subject on an individual basis, and 3) the degree of fairness and

procedural impact of certifying the action as a collective action. *Id.* at 584 (citing 7B Wright, *supra*, § 1807). One way plaintiffs may demonstrate similarly situated circumstances is "by showing a common theory of FLSA violation." *Frye v. Baptist Mem'l Hosp.*, No. CIV 07-2708-Ma, 2010 WL 3862591, at *3 (W.D. Tenn. Sept. 27, 2010) (quoting *O'Brien*, 575 F.3d at 585).

Again, the "similarly situated" requirement for a FLSA collective action is less stringent than the "predominance" requirement for a Rule 23 class action. "Plaintiffs are not required to show a 'unified policy' by the defendant in order to be similarly situated." *Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 994 (W.D. Tenn. 2011) (quoting *O'Brien*, 575 F.3d at 584). Rather, when "considering decertification, '[t]he question is simply whether the differences among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected.'" *Id.* (quoting *Frye*, 2010 WL 3862591, at *3). The named plaintiff bears the burden of demonstrating that the opt-in plaintiffs are similarly situated to him. *O'Brien*, 575 F.3d at 584 (citing 7B Wright, *supra*, § 1807).

Finally, where a subset of the opt-in plaintiffs is not similarly situated, partial decertification is possible. *Id.* at 586. A collective action need not be "totally decertified if some members are not similarly situated to the others." *Id.* Instead, "plaintiffs who are not similarly situated . . . [can] be dismissed while keeping intact the partial class." *Id.* Allowing those opt-in plaintiffs who are similarly situated to the lead plaintiff to proceed as members of a partially certified class preserves the remedial nature of the FLSA and such plaintiffs "should not be barred from the opportunity to be part of a FLSA collective action[.]" *Id.* "[I]f final certification is granted, the action proceeds to trial on a representative basis." 7B Wright, *supra*, § 1807.

Plaintiffs contend that because the opt-in Plaintiffs performed the same job duties, were paid in the same way, and "are pursuing similar legal theories to remedy the denial of pay for the

time they were required to be at the company's disposal" without compensation, they are similarly situated for purposes of filing a collective action. Defendant argues that the opt-in plaintiffs are not "similarly situated" to Hathaway because their factual and employment settings are not similar to his own, and because they advance disparate theories of liability under the FLSA. The Court briefly examines the opt-in plaintiffs below.

### A. Michael Flener

Michael Flener ("Flener") was also a laborer for Defendant. (Flener Decl. ¶ 1, DN 41-2.) Unlike Plaintiff Hathaway, Flener says he was given the choice of riding in the company van or driving himself to the job site. (*Id.* ¶ 3.) Flener chose to ride in the company van due to the distance of the job sites from his home. (*Id.*) To take the company van, Flener had to arrive at the Murray Facility by 4:30 a.m. each morning. (*Id.*) Once the equipment was loaded, Flener and his fellow laborers would board the company van and leave for the job site at approximately 5:00 a.m. (*Id.*) Flener recalls working on jobs in Paducah; Dyer, Tennessee; Clarksville, Tennessee; Springfield, Tennessee; Medina, Tennessee; Fort Campbell; Bowling Green; Hopkinsville; Marshall County; Webster County; Wickliffe; and Mayfield. (*Id.* ¶ 2.) Travel time from the Murray Facility to these jobs ranged from forty-five minutes to as long as two-and-a-half hours each way. (*Id.*) Like Hathaway, in cases of inclement weather, Flener testifies he waited in the van until the foreman determined whether work could be done that day. (*Id.* ¶ 6.) If the foreman determined work could not be done, Flener would ride back to the Murray Facility that day without compensation. (*Id.*)

The Court finds that Flener is similarly situated to Lead Plaintiff Hathaway. Defendant points out that, unlike Hathaway, Flener does not allege that riding in the company van was required. However, Hathaway need only demonstrate that the opt-in plaintiffs are similarly

6

situated to him, not identically situated. Here, the differences among the two men do not outweigh the similarities: both worked as laborers, both were hourly employees subject to the same compensation policies, both rode the company van from the Murray Facility to job sites of various distances, both assert that each day, they either loaded or watched other men load the company van, and both assert that, after the foreman declared the workday over, they would clean up the job site and load equipment before boarding the company van. Flener and Hathaway are similarly situated.

### B. David Henson and Alfredo Rocha

Unlike Hathaway and Flener, David Henson and Alfredo Rocha drove their personal vehicles to job sites. Henson worked two jobs for Defendant, both in his hometown of Clarksville, Tennessee. (David Henson's Resp. to Def.'s Stage Two Interrogs., 5, DN 41-8.) Rocha worked only one job for Defendant, near his home in northwest Tennessee. (Alfredo Rocha's Resp. to Def.'s Stage Two Interrogs., 4, DN 41-9.) After arriving at the job site, Henson and Rocha were unable to begin working, and instead were required to wait until the company van arrived. No matter what time the men arrived, their compensation did not begin until the company van arrived and the foreman declared the work day started. Henson and Rocha were not paid for this time spent waiting at the job site. Like Hathaway and Flener, however, in the case of inclement weather, Henson and Rocha waited at the job site until the foreman determined whether work could be done that day. The men also were not compensated for this waiting time.

The Court finds that, to the extent Henson and Rocha seek relief for Defendant's failure to compensate them for their time waiting for the company van to arrive, they are not similarly situated to Hathaway. Unlike Hathaway and Flener, who argue that they should be compensated

for their travel time in the company van, Henson and Rocha acknowledge they are not entitled to compensation for their commutes from home to the job site.

Instead, their claims rest on the separate theory of liability that they were entitled to compensation from the moment they arrived at the job site and that Defendant unlawfully failed to compensate them for their time spent waiting for the company van to arrive. Plaintiffs Hathaway's and Flener's claims will involve, for example, determining the nature of the work performed before leaving the Murray Facility, the benefits to Defendant in having employees ride together in the company van, and the length and nature of the time spent on the vans. None of these determinations are relevant to Henson's and Rocha's claims. Conversely, Henson's and Rocha's theory of liability involves, for example, the length of time they spent waiting for the company van, whether they were free to leave the job site before the van arrived, and the instructions they were given as to arrival time. Hathaway, as lead plaintiff, has no personal knowledge or experience in this regard and cannot adequately represent the men's interests. Plaintiff argues that Henson and Rocha, like Hathaway, seek compensation for hours they spent waiting for Defendant beyond their normal working hours. However, the Court finds this formulation too broad, as it could potentially encompass *any* claimed FLSA violation by Defendant, regardless of the facts or policy involved. Here, the differences among the plaintiffs outweigh the similarities. Henson and Rocha are not similarly situated in this regard, and their claims based on the time spent waiting for the company van to arrive are DISMISSED WITHOUT PREJUDICE.

The Court finds, however, that Henson and Rocha may remain in the collective action as it pertains to Defendant's inclement weather policy. All four opt-in plaintiffs share the common theory that Defendant unlawfully failed to pay laborers who were at the job site and ready to

work until the foreman determined if the day's work would proceed. Here, the relevant facts and law are nearly identical for each laborer. Defendant argues that because Henson and Rocha worked for Defendant for a much shorter period of time, the facts of their employment are too different from those of Hathaway. However, as mentioned above, plaintiffs need not have identical circumstances of employment. Here, where they have advanced a single theory of Defendant's liability, the differences in length of their employment do not outweigh their similarities. Thus, to the extent they seek compensation based on Defendant's inclement weather policy, Henson and Rocha are similarly situated, and therefore properly in this collective action.

Except as otherwise stated above, Plaintiffs' Motion for Final Certification is GRANTED.

## II.

Plaintiffs have also filed a Motion for Partial Summary Judgment, arguing that they are entitled to judgment on a matter of law as to liability. Because Henson's and Rocha's claims for their wait time before the company van arrived are no longer part of the certified collective action, the Court does not consider arguments on this issue. Plaintiffs contend this matter should proceed to trial solely on the issue of damages. Defendant, conversely, argues that there are number of disputed issues of material fact that preclude summary judgment. Because the Court agrees that the record before it does not warrant summary judgment on the remaining claims, Plaintiffs' Motion for Partial Summary Judgment is DENIED.

### A. Travel in Company Van

Plaintiffs contend that Defendant's failure to pay Plaintiffs Hathaway and Flener for their travel time from Defendant's Murray facility to various job sites violated the FLSA because (1) the distance of the commute to the various job sites exceeded that of a "normal" commute and

(2) the workday started when Plaintiffs and other laborers loaded equipment into the vans at the Murray facility and, thus, the continuous workday rule applies.

The FLSA mandates that employers pay a minimum wage to covered employees for each hour worked and pay overtime for work in excess of 40 hours per workweek. 29 U.S.C. §§ 206(a)(1), 207(a)(1). As a general rule, the FLSA does not require employers to pay for commuting time. Under the Portal-to-Portal Act, 29 U.S.C. § 254(a), an employer is not required to pay an employee overtime for activities such as:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). "Normal travel from home to work is not work time." 29 C.F.R. § 785.35.[4] The phrase "normal travel" is not an objective standard of how far most workers commute or are reasonably expected to commute, but rather "a subjective standard, defined by what is usual within the confines of a particular employment relationship." *Kavanagh v. Grand Union Co.*, 192 F.3d 269, 272 (2d Cir. 1999); *accord Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1286 n. 3 (10th Cir. 2006). Accordingly, home-to-work travel that is "'a contemplated, normal

---

[4] The FLSA provides:

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime.

29 C.F.R. § 785.35.

occurrence'" of the employment relationship is viewed as "normal travel" under the regulation, despite the length of the commute. *Id.* (quoting *Kavanagh*, 192 F.3d at 273).

Plaintiff argues that the travel time to the work sites is compensable because "the jobs were located more than a normal commute from [their] home[s]." (Pls.' Memo. in Supp. of Summ. J., 15, DN 41-1.) However, the distance of an employee's travel time is not dispositive on the matter of whether such travel is considered "normal" and, thus, not compensable under the FLSA. *See Smith v. Aztec Well*, 462 F.3d at 1287 n.3 (10th Cir. 2006) ("[E]ven though the plaintiffs sometimes spent up to seven hours commuting each day, their travel is still ordinary and normal home to work travel if it was a contemplated, normal occurrence under the employment contract.") (citation omitted); *Kavanagh v. Grand Union Co.*, 192 F.3d 269, 271 (2d Cir. 1999) ("Because [the plaintiff's] extensive travel was a contemplated, normal occurrence under the employment contract entered into between Kavanagh and Grant Union, 28 C.F.R. § 785.35 forecloses Kavanagh's entitlement to compensation under the FLSA."); *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994) ("The travel time was just an extended home-to-work-and-back commute").

There is a material issue of fact as to whether such travel was "normal" under the Act. First, Lead Plaintiff Michael Hathaway contends that laborers were required to ride in the company van from Defendant's facility in Murray, a fact which Defendant disputes. Although even required commuting from a central location could nonetheless be considered "normal" travel, a trier of fact could view such a requirement as support that the travel was "integral and indispensable." *See*, *e.g.*, *Smith v. Aztec Well*, 462 F.3d at 1288 ("A restriction imposed on the manner in which the plaintiffs can travel to and from their workplace is relevant only if it shows that their travel time was integral and indispensable to their principal activities"). Second, and

11

more importantly, the parties have not taken depositions and have engaged in relatively little pretrial discovery. Thus, the current record is lacking in regards to whether the frequent and sometimes lengthy travel to job sites was contemplated by the parties, whether the travel time was used in a way that benefited the Defendant, and other information that would aid the trier of fact in determining whether Plaintiffs' commute is compensable travel. Thus, a material issue of fact exists on this issue. *Cf. Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 803 (M.D. Tenn. 2008) ("The nature of the plaintiffs' duties . . . is a question of fact.") (quoting *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004) ("Whether an activity is excluded from hours worked under the FLSA, as amended by the Portal-to-Portal Act, is a mixed question of law and fact. The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law")).

Plaintiffs argue that they performed compensable work at the Murray Facility before their departure and, thus, the "continuous work day rule" applies. Under this rule, "travel time to a worksite is compensable when an employee is required to report to a meeting place to receive instructions or perform other work before or after traveling to or from the work site." *Schwab v. Bernard*, No. 5:11-CV-1216, 2012 WL 1067074, at *3 (N.D. Ohio Mar. 28, 2012) (citing 29 C.F.R. § 785.38). Application of this rule depends on whether the activities conducted prior to travel were "integral and indispensable to their principal activities." *See Smith v. Aztec Well*, 462 F.3d at 1289. As noted by the Tenth Circuit:

> If the plaintiffs' first principal activity took place at the [meeting place] before traveling to the [job] site, and their last principal activity took place at the [meeting place] after returning from the [job] site . . . their travel time would be included within their workday.

*Id.* Plaintiffs Hathaway and Flener indicate that before boarding the company van, they would "either assist other employees with loading [the van] or watch as other employees loaded

12

equipment for the day." (Pl.'s Resp. to Def.'s Stage Two Interrogs., 4, DN 41-6.) However, the record is lacking on further detail that would aid the Court in determining whether such loading was "integral and indispensable" to Plaintiffs' principal activities as laborers. Further, Defendant again disputes that such loading was required of Plaintiffs. Thus, a material issue of fact exists on this issue as well.

For the reasons listed above, Plaintiffs' Motion for Summary Judgment is DENIED with respect to their claims based on travel in the company van.

### B. Waiting for Weather Conditions

Plaintiffs next contend they are entitled to judgment as a matter of law for Defendant's failure to compensate them on days they waited at the job site to begin work but were prevented from doing so due to inclement weather. As with Plaintiffs' travel claim, the Court finds the factual record lacking and declines to grant summary judgment.

An employer does not suffer or permit an employee to work unless the employee is engaged in the "principal activity of employment." 29 U.S.C. § 254. In certain circumstances, waiting time can be considered part of the principal activity of employment. *See Bernal v. Trueblue, Inc.*, 730 F. Supp. 2d 736, 741 (W.D. Mich. 2010) (citing *Chao v. Akron Insulation & Supply, Inc.*, 184 Fed. App'x 508, 511 (6th Cir. 2006)). Where a worker is "engaged to wait" rather than "waiting to be engaged", waiting time is part of the principal activity of employment. 29 C.F.R §§ 785.14 – .16. "In determining whether an employee is engaged to wait, or waiting to be engaged, the critical inquiry is whether the time spent waiting is primarily for the benefit of employer or the employee." *Bernal*, 730 F. Supp. 2d at 741 (collecting cases).

The record does not contain enough evidence from which the Court can determine whether Plaintiffs were engaged to wait or waiting to be engaged. Plaintiffs aver that, on days the

13

foreman would cancel a job due to inclement weather, workers would sit in the truck for approximately two hours after arriving at the job site waiting for the foreman to determine whether work would begin. (*See* Flener Decl. ¶ 6.) However, there is no other information to aid the Court in determining the nature of Plaintiffs' wait time. For example, the record does not indicate whether Defendant requested or required that Plaintiffs wait at the job site, the extent to which Plaintiffs' free will was constrained during the waiting time, or the extent to which Defendant benefited from the waiting time. *See Bernal*, 730 F. Supp. 2d at 741. Therefore, the Court declines to grant summary judgment on this issue at this time.

## CONCLUSION

For the foregoing reasons:

(1) Opt-in Plaintiffs Paul Pettis, Richard Edmond, and Patrick Giordano are DISMISSED from this action WITHOUT PREJUDICE. Because these individuals are now dismissed from this collective action, Defendant's Motion to Compel Discovery Responses from these individuals, (DN 39), is DENIED as MOOT.

(2) Plaintiffs' Motion for Final Certification, (DN 41), is GRANTED IN PART and DENIED IN PART. The claims of Opt-in Plaintiffs David Henson and Alfredo Rocha for their wait time before the company van's arrival at the job site are DISMISSED WITHOUT PREJUDICE. This action will otherwise proceed collectively.

(3) Plaintiffs' Motion for Partial Summary Judgment as to Liability, (DN 41), is DENIED.

IT IS SO ORDERED.


CC:   Counsel